[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 11, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-16078

_____

D. C. Docket No. 97-00092 CV-AR-S


PATRICIA GARRETT,

                                        Plaintiff-Appellant,

UNITED STATES OF AMERICA

                                        Plaintiff-Intervenor-
                                        Appellant,

        versus

UNIVERSITY OF ALABAMA AT
BIRMINGHAM BOARD OF TRUSTEES,

                                        Defendant-Appellee.


_____

No. 02-16186

_____

D. C. Docket No. 99-02712 CV-C-NE

JOSEPH STEPHENSON,

                                                    Plaintiff-Appellant,

    versus

ALABAMA DEPARTMENT OF CORRECTIONS,
DONAL CAMPBELL, in his official
capacity as Director, Department of Corrections,

                                                    Defendants-Appellees.

_____

No. 02-16408
_____

D. C. Docket No. 97-02179 CV-AR-S

MILTON ASH,

                                                    Plaintiff,

UNITED STATES OF AMERICA,

                                                    Plaintiff-Intervenor-
                                                    Appellant,

    versus

ALABAMA DEPARTMENT OF YOUTH
SERVICES,

                                                    Defendant-Appellee.

_____

02-16455

_____

D. C. Docket No. 97-02179 CV-AR-S


MILTON ASH,

Plaintiff-Appellant,

UNITED STATES OF AMERICA,

Intervenor-Plaintiff,

versus

ALABAMA DEPARTMENT OF YOUTH
SERVICES,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

**(September 11, 2003)**

Before EDMONDSON, Chief Judge, CARNES, Circuit Judge, and STORY[*],
District Judge.

_____

[*]Honorable Richard W. Story, United States District Judge for the Northern District of Georgia,
sitting by designation.

3

PER CURIAM:

Patricia Garrett, Milton Ash and Joseph Stephenson (collectively "Appellants") are residents of Alabama who suffer from disabilities. In separate civil actions in the Northern District of Alabama, they sued their former employers, the Board of Trustees of the University of Alabama in Birmingham (UAB) (Garrett), the Alabama Department of Youth Services (ADYS) (Ash), and the Alabama Department of Corrections (Stephenson) (collectively "the state agencies"), under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1]

---

[1] All three plaintiffs also raised claims under the Americans with Disabilities Act (ADA), and Garrett raised a claim under the Family and Medical Leave Act. Garrett and Ash filed their claims before Stephenson filed. The district court initially dismissed all of Garrett and Ash's claims because of Eleventh Amendment immunity, and Garrett and Ash appealed. On appeal the cases were consolidated; and we reversed in part, saying that Congress had abrogated the state's immunity to suits under the ADA and section 504 of the Rehabilitation Act. Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees, 193 F.3d 1214, 1218-19 (11th Cir. 1999). UAB and ADYS appealed our decision to the United States Supreme Court. The Supreme Court, in Board of Trustees of the Univ. of Ala. v. Garrett, 121 S.Ct. 955 (2001), reversed our decision and said the state agencies were entitled to immunity on the ADA claims because the ADA exceeded Congress's authority, under § 5 of the Fourteenth Amendment, to abrogate a state's Eleventh Amendment immunity: neither a pattern of discrimination by the States which violates the Fourteenth Amendment nor a remedy "congruent and proportional to the targeted violation" had been shown. Id. at 967-68. On remand from the Supreme Court, we said that, under the Supreme Court's reasoning, Congress could not abrogate a state's immunity from suit to claims under the Rehabilitation Act. Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees, 261 F.3d 1242, 1244 (11th Cir. 2001). On rehearing, we remanded

4

The state agencies moved for summary judgment based on their Eleventh Amendment immunity.[2]  Appellants responded that the state agencies, which all receive federal funds, waived their Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act.  The district court determined that the state agencies were immune from suit and granted summary judgment dismissing Appellants' claims.  Because the state agencies have waived their Eleventh Amendment immunity by accepting federal funds, we VACATE the district court's judgment and REMAND the cases for further proceedings.

"The grant or denial of a state's sovereign immunity defense is an issue of law subject to de novo review by this court."  See In re Burke, 146 F.3d 1313, 1316 (11th Cir. 1998).

Appellants argue that the state agencies waived their Eleventh Amendment immunity and willingly consented to private suits under the Rehabilitation Act when they accepted federal funds.[3]  42 U.S.C. § 2000d-7 provides:

the cases for the district court to consider whether the state agencies had waived their immunity to suits under the Rehabilitation Act.  Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees, 276 F.3d 1227, 1228-29 (11th Cir. 2001).  This appeal arises out of the district court's decision on remand. Stephenson's claims were filed while the Garrett case was proceeding on appeal (Stephenson initially only filed an ADA claim; he subsequently amended his complaint to add a claim under the Rehabilitation Act).

   [2]The merits of Appellants' Rehabilitation Act claims are no issue in this appeal.

   [3]Garrett also argues that UAB waived its Eleventh Amendment immunity when it failed to raise the defense in its answer.  Because we conclude that Appellees have waived their Eleventh

A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. §794], title IX of the Education Amendments of 1972 [20 U.S.C. §1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

In Sandoval v. Hagan, 197 F.3d 484 (11th Cir. 1999), overruled on other grounds, Alexander v. Sandoval, 121 S.Ct. 1511 (2001), we said that section 2000d-7 manifested an "unmistakable intent to condition federal funds on a state's waiver of sovereign immunity." Sandoval, 197 F.3d at 493. In addition, we said a state waives its Eleventh Amendment immunity if it continues to receive federal funds after the provision was enacted. Id. at 500.

The Sandoval court also said that Title VI of the Civil Rights Act of 1964 created an implied private right of action to enforce regulations promulgated under section 602. 197 F.3d at 502. The Supreme Court granted certiorari on this issue

---

Amendment Immunity by accepting federal funds, we decline to discuss this argument.

6

and reversed, saying only that Title VI did not create a private right of action to enforce the regulations. <u>Alexander</u>, 121 S.Ct. at 1523. The Supreme Court did not reject the <u>Sandoval</u> court's discussion of section 2000d-7 and its resolution of the waiver of Eleventh Amendment immunity issue.[4] <u>Sandoval's</u> resolution of the waiver of Eleventh Amendment immunity issue survived <u>Alexander</u>. <u>See generally</u> <u>United States v. Kirk</u>, 528 F.2d 1057, 1063-64 (5th Cir. 1976)(decisions of this court on issues remain binding, notwithstanding grant of certiorari and reversal on other issues).[5] Unless the state agencies can show that <u>Sandoval</u> has been implicitly overruled by the Supreme Court (or this court sitting <u>en</u> <u>banc</u>), or that <u>Sandoval</u> is distinguishable, it controls the outcome of this case.

The state agencies argue that <u>Sandoval</u> has been implicitly overruled by the Supreme Court in <u>Federal Maritime Comm'n v. South Carolina State Ports Auth.</u>,

---

[4] The Supreme Court, if anything, ratified the <u>Sandoval</u> court's position, saying in dicta:

> [s]ection 1003 of the Rehabilitation Act Amendments of 1986, 100 Stat. 1845, 42 U.S.C. § 2000d-7, expressly abrogated State's sovereign immunity against suit brought in federal court to enforce Title VI and provided that in a suit against a State "remedies (including remedies both at law and in equity) are available . . . to the same extent as such remedies are avaliable . . . in the suit against any public or private entity other than a State," §2000d-7(a)(2) . . . . It is thus beyond dispute that private individuals may sue to enforce § 601.

<u>Alexander</u>, 121 S.Ct. at 1516 (citations omitted)

[5] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down before 01 October 1981.

122 S.Ct. 1864 (2002).[6] Federal Maritime Comm'n discusses whether a state can be subject to an administrative adjudication of a complaint when that complaint could not be brought in court because of the state's Eleventh Amendment immunity. Federal Maritime Comm'n said nothing about whether Congress could condition receipt of federal funds on a waiver of Eleventh Amendment immunity.

While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point. See Florida League of Professional Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir. 1996)("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.") "Without a clearly contrary opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court . . . ." National Labor Relations Board v. Datapoint Corp., 642 F.2d 123, 129 (5th Cir. Unit A Aug. 1981)(emphasis added). Federal

---

[6] The state agencies also argue that Alden v. Maine, 119 S.Ct. 2240 (1999), and College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 119 S.Ct. 2219 (1999), implicitly overrule Sandoval. Both Alden and College Sav. Bank were decided before Sandoval and cannot implicitly overrule it. See Smith v. GTE Corp., 236 F.3d 1292, 1303 (11th Cir. 2001)("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time.").

Maritime Comm'n and Sandoval are not clearly inconsistent. We are bound to follow Sandoval.[7]

The state agencies also argue that, even if Sandoval was not overruled, they can prevail under the analysis of Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98 (2d Cir. 2001), and Pace v. Bogalusa City School Bd., 325 F.3d 609 (5th Cir. 2003), rehearing en banc granted, 2003 WL 21692677 (5th Cir. July 17, 2003).[8] In Garcia, the Second Circuit said that a state could not knowingly waive its Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act because the state would believe that Congress had already abrogated its immunity to claims under the ADA. 280 F.3d at 114. In Pace, the Fifth Circuit adopted the Second Circuit's reasoning. 325 F.3d at 616-17.

The state agencies argue that they could not have knowingly waived their immunity to claims under section 504 of the Rehabilitation Act because they

---

[7]The state agencies make several arguments that section 2000d-7 cannot operate as a valid waiver of Eleventh Amendment immunity. These arguments include that Congress cannot use its Spending Clause powers to obtain a waiver of Eleventh Amendment immunity. All of these arguments are foreclosed by Sandoval.

[8] As an alternative ground for affirming the district court, the state agencies argue that no private right of action can exist against a state under section 504 of the Rehabilitation Act. The Supreme Court has made clear that section 504 is "enforceable through private causes of action." Barnes v. Gorman, 122 S.Ct. 2097, 2100 (2002). Section 2000d-7 makes clear that states accepting federal funds are not immune to suits for violations of section 504. Appellees' argument that this provision does not include private actions is without merit.

thought they did not have immunity to waive. They argue that the ADA purported to abrogate a state's immunity to discrimination claims based on disabilities and, until the Supreme Court said -- in Board of Trustees of the Univ. of Alabama v. Garrett, 121 S.Ct. 955 (2001) -- that this abrogation was invalid, the state agencies had no reason to believe they were immune to these kinds of claims. They, therefore, claim that they could not make a voluntary waiver of immunity. See Garcia, 280 F.3d at 114 ("[T]he proscriptions of Title II [of the ADA] and § 504 are virtually identical, a state accepting conditioned federal funds could not have understood that in doing so it was actually abandoning its sovereign immunity from private damages suits."). The state agencies point out that Sandoval addresses section 2000d-7's impact on Title VI of the Civil Rights Act of 1964 which does not have a parallel statute, like the ADA, purporting to abrogate a state's sovereign immunity.

Sandoval prevents us from adopting this argument. In Sandoval we said that the "unequivocal indication that a State has consented to federal jurisdiction" could be provided by the statutory language in the waiver provision -- "either by the most express language or by such overwhelming implication from the text as (will) leave no room for any other reasonable construction." Sandoval, 197 F.3d at 493 (internal quotation marks and citations omitted)(alteration in original).

Where Congress has unambiguously conditioned the receipt of federal funds on a waiver of immunity, <u>Sandoval</u> does not leave open the possibility that a state can continue to accept federal funds without knowingly waiving its immunity. The <u>Sandoval</u> court then said that section 2000d-7 "explicitly waives state sovereign immunity." <u>Id.</u> We reject the argument that a state by accepting federal funds after the enactment of section 2000d-7 only waived its immunity to claims under <u>some</u> of the acts listed in that section.

Section 2000d-7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act. By continuing to accept federal funds, the state agencies have waived their immunity.[9] We VACATE the district court's orders granting summary judgment and dismissing Appellants' claims and REMAND the cases for further proceedings.

VACATED and REMANDED.

---

[9]Ash also argued that the district court abused its discretion when it refused to allow him to amend his complaint to add a claim for injunctive relief under <u>Ex parte Young</u>, 28 S.Ct. 441 (1908). Ash sought to add this claim when the case was before the district court on remand to consider whether the state agencies had waived their immunity. Because we have decided that the state agencies have waived their immunity, Ash concedes that this argument is moot; and we say nothing about it.

11